# United States District Court



FOR THE
**NORTHERN DISTRICT OF CALIFORNIA**

VENUE: SAN FRANCISCO

---

UNITED STATES OF AMERICA,

V.

XANTHE LAM,
ALLEN LAM,
JOHN CHAN, and
JAMES QUACH,

CR 18 527 WHA

**FILED**

OCT 25 2018

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE

DEFENDANT(S).

---

## INDICTMENT

18 U.S.C. § 1832(a)(5) – Conspiracy to Commit Theft of Trade Secrets
18 U.S.C. § 1832(a) – Theft of Trade Secrets
18 U.S.C. § 1030(b) – Conspiracy to Commit Computer Fraud and Abuse
18 U.S.C. § 1030(a)(2)(C) – Computer Fraud and Abuse
18 U.S.C. § 2 – Aid & Abet
18 U.S.C. §§ 982, 1030, 1834, and 2323 – Criminal Forfeiture

---

A true bill.

_____
Foreman

Filed in open court this ___25___ day of __OCTOBER 2018__

_____
Clerk

Bail, $ ___   **NO BAIL WARRANT**

10/25/18

AO 257 (Rev. 6/78)

SEALED BY ORDER
OF THE COURT

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT

☐ SUPERSEDING

### OFFENSE CHARGED

18 U.S.C. § 1832(a)(5) – Conspiracy to Commit Theft of Trade Secrets ; 18 U.S.C. § 1832(a) – Theft of Trade Secrets; 18 U.S.C. § 1030(b) – Conspiracy to Commit Computer Fraud and Abuse; 18 U.S.C. § 1030(a)(2)(C) – Computer Fraud and Abuse; 18 U.S.C. § 2 – Aid and Abet; 18 U.S.C. §§ 982, 1030, 1834, and 2323(b) – Criminal Forfeiture.

PENALTY:   See Attached

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

### ─ DEFENDANT - U.S

▶ XANTHE LAM

DISTRICT COURT NUMBER

CR 18 527 : WHA

### PROCEEDING

Name of Complaintant Agency, or Person (& Title, if any)

FEDERAL BUREAU OF INVESTIGATION

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40.  Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:

☐ U.S. ATTORNEY   ☐ DEFENSE

} SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

} MAGISTRATE CASE NO.

Name and Office of Person
Furnishing Information on this form   ALEX G. TSE

☒ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S.   MATTHEW A. PARRELLA
Attorney (if assigned)   MICHELLE J. KANE

### ─ DEFENDANT

IS *NOT* IN CUSTODY
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

FILED

IS IN CUSTODY

4) ☐ On this charge

5) ☐ On another conviction

6) ☐ Awaiting trial on other charges
   If answer to (6) is "Yes", show name of institution

OCT 25 2018

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE
☐ Federal   ☐ State

Has detainer   ☐ Yes   } If "Yes"
been filed?   ☐ No   give date filed

DATE OF ▶   Month/Day/Year
ARREST

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED ▶   Month/Day/Year
TO U.S. CUSTODY

☐ This report amends AO 257 previously submitted

### ─ ADDITIONAL INFORMATION OR COMMENTS

PROCESS:

☐ SUMMONS   ☐ NO PROCESS*   ☒ WARRANT   Bail Amount: NO BAIL

If Summons, complete following:
☐ Arraignment   ☐ Initial Appearance

Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment*

Date/Time:   Before Judge:

Comments:

## ATTACHMENT

**Statutory Maximum Penalties:**

Counts 1 and 28 (18 U.S.C. §§ 1832(a)(5) – Conspiracy to Commit Theft of Trade Secrets): Ten years of imprisonment, $250,000 fine, three years of supervised release, $100 special assessment, forfeiture.

Counts 2-27, 29-32 (18 U.S.C. §§ 1832(a) and 2 – Theft of Trade Secrets, Aid and Abet): Ten years of imprisonment, $250,000 fine, three years of supervised release, $100 special assessment, forfeiture.

Count 33 (18 U.S.C. § 1030(b) – Conspiracy to Commit Computer Fraud and Abuse): Five years of imprisonment; $250,000 fine, three years of supervised release, $100 special assessment, forfeiture.

Counts 34-36 (18 U.S.C. § 1030(a)(2)(C) and 2 – Computer Fraud and Abuse, Aid & Abet): Five years of imprisonment; $250,000 fine, three years of supervised release, $100 special assessment, forfeiture.

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT

☐ SUPERSEDING

| OFFENSE CHARGED | |
|---|---|
| 18 U.S.C. § 1832(a)(5) – Conspiracy to Commit Theft of Trade Secrets;<br>18 U.S.C. § 1832(a) – Theft of Trade Secrets;<br>18 U.S.C. § 2 – Aid and Abet;<br>18 U.S.C. §§ 982, 1834, and 2323(b) – Criminal Forfeiture. | ☐ Petty<br>☐ Minor<br>☐ Misde-<br>meanor<br>☒ Felony |

PENALTY:   See Attached

— Name of District Court, and/or Judge/Magistrate Location —

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

— DEFENDANT - U.S. —

ALLEN LAM

DISTRICT COURT NUMBER

CR 18 527   **WHA**

### PROCEEDING

Name of Complainant Agency, or Person (& Title, if any)

FEDERAL BUREAU OF INVESTIGATION

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40.  Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
  ☐ U.S. ATTORNEY   ☐ DEFENSE
} SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant
} MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under
}

Name and Office of Person Furnishing Information on this form   ALEX G. TSE

☒ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)   MATTHEW A. PARRELLA
MICHELLE J. KANE

### DEFENDANT

**IS *NOT* IN CUSTODY**
1) ☒ Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**FILED**

**IS IN CUSTODY**
4) ☐ On this charge

5) ☐ On another conviction

6) ☐ Awaiting trial on other charges
   If answer to (6) is "Yes", show name of institution

OCT 25 2018

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE

☐ Federal   ☐ State

Has detainer been filed?   ☐ Yes   ☐ No
If "Yes" give date filed

DATE OF ARREST ▶   Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶   Month/Day/Year

☐ This report amends AO 257 previously submitted

### ADDITIONAL INFORMATION OR COMMENTS

PROCESS:

☐ SUMMONS   ☐ NO PROCESS*   ☒ WARRANT   Bail Amount: NO BAIL

If Summons, complete following:
☐ Arraignment   ☐ Initial Appearance

Defendant Address:

\* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:          Before Judge:

Comments:

# **ATTACHMENT**

**Statutory Maximum Penalties:**

<u>Count 1</u> (18 U.S.C. §§ 1832(a)(5) – Conspiracy to Commit Theft of Trade Secrets): Ten years of imprisonment, $250,000 fine, three years of supervised release, $100 special assessment, forfeiture.

<u>Counts 2-27</u> (18 U.S.C. §§ 1832(a) and 2 – Theft of Trade Secrets, Aid and Abet): Ten years of imprisonment, $250,000 fine, three years of supervised release, $100 special assessment, forfeiture.

AO 257 (Rev. 6/78)

~~SEALED BY ORDE~~
~~OF THE COURT~~

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT

☐ SUPERSEDING

### OFFENSE CHARGED

18 U.S.C. § 1832(a)(5) – Conspiracy to Commit Theft of Trade Secrets;
18 U.S.C. § 1832(a) – Theft of Trade Secrets;
18 U.S.C. § 2 – Aid and Abet;
18 U.S.C. §§ 982, 1834, and 2323(b) – Criminal Forfeiture.

☐ Petty
☐ Minor
☐ Misde-
   meanor
☒ Felony

PENALTY:   See Attached

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

### DEFENDANT - U.S

▶ JOHN CHAN

DISTRICT COURT NUMBER

CR 18 527   **WHA**

### PROCEEDING

Name of Complaintant Agency, or Person (& Title, if any)

FEDERAL BUREAU OF INVESTIGATION

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40.  Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:   } SHOW DOCKET NO.
  ☐ U.S. ATTORNEY   ☐ DEFENSE

☐ this prosecution relates to a pending case involving this same defendant   } MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under }

Name and Office of Person
Furnishing Information on this form   ALEX G. TSE

☒ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S.   MATTHEW A. PARRELLA
Attorney (if assigned)   MICHELLE J. KANE

### DEFENDANT

**IS *NOT* IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior
   summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction

6) ☐ Awaiting trial on other charges
   ☐ Federal   ☐ State

If answer to (6) is "Yes", show name of institution

Has detainer   ☐ Yes   } If "Yes"
been filed?    ☐ No        give date
                           filed

DATE OF             Month/Day/Year
ARREST

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED   ▶   Month/Day/Year
TO U.S. CUSTODY

☐ This report amends AO 257 previously submitted

**FILED**

OCT 25 2018

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE

### ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
☐ SUMMONS   ☐ NO PROCESS*   ☒ WARRANT   Bail Amount: NO BAIL

If Summons, complete following:
☐ Arraignment   ☐ Initial Appearance
Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment*

Date/Time:                           Before Judge:

Comments:



# ATTACHMENT

## Statutory Maximum Penalties:

Count 1 (18 U.S.C. §§ 1832(a)(5) – Conspiracy to Commit Theft of Trade Secrets): Ten years of imprisonment, $250,000 fine, three years of supervised release, $100 special assessment, forfeiture.

Count 8 (18 U.S.C. §§ 1832(a) and 2 – Theft of Trade Secrets, Aid and Abet): Ten years of imprisonment, $250,000 fine, three years of supervised release, $100 special assessment, forfeiture.



AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT

☐ SUPERSEDING

Name of District Court, and/or Judge/Magistrate Location
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

### OFFENSE CHARGED

18 U.S.C. § 1832(a)(5) – Conspiracy to Commit Theft of Trade Secrets; 18 U.S.C. § 1832(a) – Theft of Trade Secrets; 18 U.S.C. § 1030(b) – Conspiracy to Commit Computer Fraud and Abuse; 18 U.S.C. § 1030(a)(2)(C) – Computer Fraud and Abuse; 18 U.S.C. § 2 – Aid and Abet; 18 U.S.C. §§ 982, 1030, 1834, and 2323(b) – Criminal Forfeiture.

PENALTY:  See Attached

☐ Petty
☐ Minor
☐ Misde-
    meanor
☒ Felony

---

### DEFENDANT - U.S

▶ JAMES QUACH

DISTRICT COURT NUMBER

CR 18 527   WHA

---

### PROCEEDING

Name of Complainant Agency, or Person (& Title, if any)

FEDERAL BUREAU OF INVESTIGATION

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40.  Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
  ☐ U.S. ATTORNEY  ☐ DEFENSE

SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form    ALEX G. TSE

☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)    MATTHEW A. PARRELLA   MICHELLE J. KANE

---

### DEFENDANT

**IS _NOT_ IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

FILED

**IS IN CUSTODY**
4) ☐ On this charge

5) ☐ On another conviction

6) ☐ Awaiting trial on other charges  }  ☐ Federal  ☐ State

OCT 25 2018
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE

If answer to (6) is "Yes", show name of institution

Has detainer been filed?  ☐ Yes  ☐ No

If "Yes" give date filed

DATE OF ARREST

Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶

Month/Day/Year

☐ This report amends AO 257 previously submitted

---

### ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
☐ SUMMONS  ☐ NO PROCESS*  ☒ WARRANT    Bail Amount: NO BAIL

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance

Defendant Address:

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:                    Before Judge:

Comments:

## **ATTACHMENT**

**Statutory Maximum Penalties:**

Count 28 (18 U.S.C. §§ 1832(a)(5) – Conspiracy to Commit Theft of Trade Secrets): Ten years of imprisonment, $250,000 fine, three years of supervised release, $100 special assessment, forfeiture.

Counts 29-32 (18 U.S.C. §§ 1832(a) and 2 – Theft of Trade Secrets, Aid and Abet): Ten years of imprisonment, $250,000 fine, three years of supervised release, $100 special assessment, forfeiture.

Count 33 (18 U.S.C. § 1030(b) – Conspiracy to Commit Computer Fraud and Abuse): Five years of imprisonment; $250,000 fine, three years of supervised release, $100 special assessment, forfeiture.

Counts 34-36 (18 U.S.C. § 1030(a)(2)(C) and 2 – Computer Fraud and Abuse, Aid & Abet): Five years of imprisonment; $250,000 fine, three years of supervised release, $100 special assessment, forfeiture.

1  | ALEX G. TSE (CABN 132612)
2  | United States Attorney

3

4

5

6

7

8  | UNITED STATES DISTRICT COURT

9  | NORTHERN DISTRICT OF CALIFORNIA

10 | SAN FRANCISCO DIVISION

11 | UNITED STATES OF AMERICA,                    ) CASE NO. CR 18 527 WHA
12 |                                              )
   |          v.                                  )
13 |                                              ) VIOLATIONS: 18 U.S.C. § 1832(a)(5) – Conspiracy
   | XANTHE LAM,                                  ) to Commit Theft of Trade Secrets; 18 U.S.C. §
14 | ALLEN LAM,                                   ) 1832(a) – Theft of Trade Secrets; 18 U.S.C. § 1030(b)
   | JOHN CHAN, and                              ) – Conspiracy to Commit Computer Fraud and Abuse;
15 | JAMES QUACH,                                 ) 18 U.S.C. § 1030(a)(2)(C) – Computer Fraud and
   |                                              ) Abuse; 18 U.S.C. § 2 – Aid & Abet; 18 U.S.C. §§
16 |          Defendants.                         ) 982, 1030, 1834, & 2323 – Criminal Forfeiture.
   |                                              )
17 |                                              ) FILED UNDER SEAL
   |                                              )
18 | _____) SAN FRANCISCO VENUE

19 |                        I N D I C T M E N T

20 | The Grand Jury charges:

21 |                     INTRODUCTORY ALLEGATIONS

22 | The Victim Company:

23 |          1.       Genentech, Inc. ("Genentech") was a biotechnology corporation, established in 1976,

24 | whose principal place of business was South San Francisco, California. Genentech has been part of the

25 | Roche Group since March 2009. Genentech has been discovering, developing, manufacturing, and

26 | commercializing pharmaceutical therapies for more than 40 years. Genentech manufactured and

27 | commercialized biopharmaceuticals for a variety of medical conditions, including cancer, rheumatoid

28 | arthritis, heart attack, stroke, and others.

INDICTMENT

Biopharmaceuticals or Biologics:

2.     Biopharmaceuticals are a class of large-molecule drugs that are created using genetically-modified living cells. Relevant to this indictment, Genentech has developed, manufactured, and marketed the following biopharmaceuticals, used in and intended to be used in interstate and foreign commerce:

      a.     Pulmozyme (dornase alfa), an inhalation treatment for cystic fibrosis.

      b.     Rituxan (rituximab), for use in treating certain types of non-Hodgkin's lymphoma and chronic lymphocytic leukemia.

      c.     Herceptin (trastuzumab), for the treatment of certain metastatic breast cancers, as an adjuvant therapy for breast cancer, and for certain metastatic gastric cancers.

      d.     Avastin (bevacizumab), for the treatment of various cancers.

Biosimilars:

3.     Biosimilars are biopharmaceutical drugs designed to have active properties similar to a previously-approved drug – roughly the equivalent of a "generic" chemical drug.  The Biologics Price Competition and Innovation Act, 42 U.S.C. § 262, enacted in 2010, provides for abbreviated regulatory approval for biosimilars by letting applicants rely on the extensive clinical testing previously conducted by the innovator company that developed the medicine the applicant wants to copy.

Other Entity:

4.     JHL Biotech, Inc. ("JHL") was founded in 2012 and is headquartered in Zhubei, Taiwan. It operates as a biopharmaceutical company worldwide.  JHL's website (www.jhlbiotech.com) states that JHL provides cell line cloning, process development, and manufacturing capabilities and services to emerging and established biopharmaceutical companies seeking to collaboratively develop, manufacture and commercialize new, high-quality, affordable biologics.  JHL was developing biosimilars of Genentech biopharmaceuticals including Pulmozyme, Rituxan, Herceptin, and Avastin.

The Defendants:

5.     XANTHE LAM ("XANTHE LAM") – Principal Scientist with Genentech. XANTHE LAM was employed by Genentech from 1986 until 2017.

6.     ALLEN C. LAM ("ALLEN LAM") – XANTHE LAM's husband. He worked in Quality

INDICTMENT                                          2

1   Control at Genentech from 1989 to 1998. ALLEN LAM consulted for Genentech competitor JHL from

2   at least 2013 through 2014, and in 2017.

3         7.     JOHN CHAN ("CHAN") – son of a friend of XANTHE LAM's. XANTHE LAM helped

4   CHAN obtain employment at Genentech and JHL. CHAN worked at JHL from May 2014 to June 2017

5   as a Project Lead and Formulation Group Leader on JHL's Pulmozyme biosimilar project.

6         8.     JAMES QUACH ("QUACH") – former Genentech engineer and former consultant for

7   JHL.

8   Genentech Trade Secrets:

9         9.     Genentech's biopharmaceutical technology contained trade secrets, as defined in Title 18,

10  United States Code, Section 1839(3), that were included in, and intended to be included in, products sold

11  worldwide. Genentech's biopharmaceutical technology included, but was not limited to, the following

12  trade secrets:

13        a.     Pulmozyme Physiochemical Characterization Methods: Genentech has developed

14  quality control methods and corresponding proprietary test procedures for determining the

15  physiochemical properties of Pulmozyme, including, for example, its charge heterogeneity.

16  These procedures are used by Genentech to ensure that their products meet the specifications

17  approved by regulators.

18        b.     Stability Assays for Pulmozyme: Genentech has developed "assays," or

19  proprietary analytical methods, to test and validate the stability of Pulmozyme. These methods

20  are designed to ensure that the drug substance and final drug product are stable and will remain

21  so over time. These methods differ from publicly available guidelines.

22        c.     Methyl Green Assay for Quantitating the Activity of Pulmozyme: Genentech

23  developed a proprietary procedure for quantitating the activity of rhDnase (Pulmozyme) using a

24  methyl green assay. Genentech's procedure includes specifications for preparing the sample,

25  sample preparation protocols, detailed instructions for running the test and for analyzing the

26  results, and acceptance criteria.

27        d.     Methyl Green Assay for Identifying Pulmozyme: Genentech developed a

28  proprietary procedure for identifying Pulmozyme using a methyl green assay.

INDICTMENT             3

e.    Neutral Sugars in Pulmozyme:  Genentech has developed detailed test procedures for determining the number of neutral sugars per known unit of Pulmozyme. Through research and development, Genentech has determined the acceptable range of neutral sugars based on historical results from its test procedures.

f.    Use of Stedim Bags:  Genentech has invested significant time in developing and running proprietary tests to determine the suitability of single-use bio process bags, also known as "Stedim" bags for storage of Pulmozyme. Genentech's research, which it has maintained confidential, reveals how to best test for chemical, physical, and biological stability when the drug is stored in stedim bags, including the chromatographic, spectroscopic, and pH analyses performed and the results of those analyses.

g.    Methods for Assessing the Stability of Pulmozyme:  Genentech has developed specific test procedures, detailed instructions for preparing the samples, to evaluate the stability of its Pulmozyme drug product and to ensure that the product remains stable over the course of its lifecycle. Genentech's procedures include methods for simulating various stress conditions in order to ensure that its array of assays adequately detect various levels of degradation in its drug product.

h.    Excipient Assays for Rituxan:  Genentech has developed proprietary analytical methods to test and validate the total solute concentration (the amount of solutes/particles dissolved in a solution) of ions and nonionized molecules in Rituxan.

i.    Purity Assays for Rituxan:  Genentech has developed certain proprietary assays to determine the purity of Rituxan, including step-by-step instructions for conducting those assays and the expected results for those tests.

j.    Quality Assays for Rituxan:  Genentech  has developed a set of specific assays and corresponding specifications to assure the quality of Rituxan.

k.    Peptide Mapping for Rituxan:  Genentech has developed a certain proprietary assay to determine the "fingerprint" of the protein in Rituxan through peptide (short chains of amino acid molecules) mapping, including step-by-step instructions for conducting those assays and the expected results.

l.      Glycan Assays for Rituxan:  Through research and development, Genentech has developed certain proprietary assays to best determine the glycosylation (when a carbohydrate is attached to a functional group of another molecule) of Rituxan, including step-by-step instructions for conducting those assays and the expected results for those tests.

m.      DNA Sequence:  The DNA sequence for one of Genentech's proprietary monoclonal antibody (antibodies that are made by identical immune cells that are all clones of a unique parent cell) in development.

n.      Excerpts of Genentech's BLA Submission for Rituxan:  Genentech submitted a Biologics License Application ("BLA") for Rituxan to the FDA, which maintains confidentiality during the application process. That submission contained Genentech's confidential trade secrets concerning the manufacture of Rituxan and included its drug substance and drug product specifications and analytical methods, as well as its in-process quality control methods.

o.      Identity Assays for Herceptin:  Genentech has developed certain assays to study the identity of Herceptin. These include specific test and validation protocols and procedures, drug substance and drug product specifications, and acceptance criteria Genentech used for assessing the identity of Herceptin, as well as proprietary information on the physical and chemical characteristics of Herceptin.

p.      Purity Assays for Herceptin:  Genentech has developed certain proprietary assays to determine the purity of Herceptin, including step-by-step instructions for conducting those assays and the expected results for those tests.

q.      Stability Assays for Herceptin:  Genentech has developed proprietary analytical methods to test and validate the stability of Herceptin. These methods are critical to ensuring that the drug substance and final drug product are stable and will remain so over time.

r.      Assays to Assure Herceptin quality:  Through research and development, Genentech has developed a set of specific assays to test for the key quality attributes of its Herceptin drug products.

s.      Identity Assays for Avastin:  Genentech has developed certain assays to study the identity of Avastin. These include Genentech's specific test and validation protocols and

procedures, drug substance specifications, and acceptance criteria, which are used for assessing the identity of Avastin, as well as proprietary information on the physical and chemical characteristics of Avastin.

t.      Sterility Test Procedures for Genentech Products:  Genentech has developed proprietary test procedures to test the sterility of its products, including by detecting the presence of viable bacteria, fungi, or yeast.

u.      Out-of-Specification Requirements:  Genentech has developed requirements and step-by-step procedures based on regulatory guidelines for how to investigate, evaluate, and take action on out-of-specification test results of investigational medicinal products and commercial material, and how to ensure compliance with applicable regulatory requirements. Genentech also developed instructions for the assessment and closure of out-of-specification discrepancies, including in-process reject limit excursions. These procedures and requirements allow Genentech to ensure compliance with applicable regulatory requirements.

v.      Good Documentation Practices:  Genentech has developed documentation practices for Good Manufacturing Practices ("GMPs") at its manufacturing facilities. These detailed practices and procedures provide a comprehensive roadmap for a biopharmaceutical manufacturer seeking to set up, establish and validate procedures and processes in its manufacturing facilities, as well as satisfy regulatory requirements in audits or inspections for approval to market biopharmaceutical products.

w.      Raw Material Management:  Genentech has developed policies and procedures relating to the management of raw materials, including quality systems for managing the receipt, identification, storage, handling, control, movement, sampling, dispensing, distribution, and release of raw materials. The proper management of raw materials is critical to the manufacturing process, and requires extensive and time-consuming research and testing to assure the quality of materials used in manufacturing.

x.      Procedures to Assure Quality Control:  Through research and development, Genentech has developed a specific and detailed procedure for the inspection of small-volume parenterals, that is, drugs administered particularly intravenously or by injection, as part of their

quality control system. This procedure differed from publicly available guidance through the USP Reference Standards. The step-by-step instructions contained in the procedure allow Genentech to be compliant with the regulatory standards.

y.      Qualitative Appearance of Liquid Samples and Lyophilized Vials:  Genentech has developed detailed methods for determining qualitatively the clarity, degree of opalescence, and degree of coloration of liquid samples of lyophilized, or "freeze-dried," vials.

z.      Manufacturing Protocols for Preventing Contamination:  Genentech developed, refined, and implemented numerous manufacturing protocols to ensure the high quality of its drug substances and drug products for preventing surface contamination. These protocols include instructions for selecting surfaces that will come in contact with biologics, testing the surfaces, and documenting the tests. They also outline detailed instructions for cleaning biochemical manufacturing and cell banking areas in order to meet regulatory standards.

aa.      Manufacturing Protocols to Maintain Equipment:  Genentech developed, refined, and implemented numerous manufacturing protocols to ensure the high quality of its drug substances and drug products by maintaining properly functioning equipment.  As part of its process to optimize equipment function, Genentech developed a custom-made calibration station and developed detailed instructions for proper operation and calibration. Genentech's confidential protocols also include step-by-step instructions for qualifying and validating equipment, maintaining the qualified state, and decommissioning equipment. The instructions help Genentech prevent product failures or unnecessary shut-downs.

bb.      Manufacturing Protocols to Maintain a Sterile Environment:  Genentech developed, refined, and implemented numerous manufacturing protocols to ensure the high quality of its drug substances and drug products through the maintenance of a sterile environment.  Genentech did so by standardizing procedures to control for such conditions as airborne particulate, microorganisms, and airflow. These procedures include step-by-step instructions for conducting automated filter integrity testing and tests using HEPA (High-Efficiency Particulate Arrestor) filters, including the parameters for testing filter functions, a "troubleshooting guide" with a list of common problems and corresponding corrective actions,

INDICTMENT                                    7

schematics showing how to set up the filters, and instructions for replacing filters, documenting the results of tests, and ensuring that filters are supplying air appropriately to work areas.

cc.    Manufacturing Protocols to Maintain Facilities:  Genentech developed, refined, and implemented numerous manufacturing protocols to ensure the high quality of its drug substances and drug products by maintaining properly functioning facilities. These protocols include Genentech's processes for shutting down and restarting manufacturing facilities and utilities, including instructions for shutting down and restarting water systems, compressed gasses, steam, heating, ventilation, and air-conditioning, and other environmentally controlled GMP areas, as well as instructions for testing utility systems.

dd.    Manufacturing Protocols to Manage Risks:  Genentech developed, refined, and implemented numerous manufacturing protocols to ensure the high quality of its drug substances and drug products through the identification and mitigation of risks.  These confidential protocols represent Genentech's process for the assessment, control, communication, and review of risks to the quality of the drug product across the product lifecycle. They include Genentech's global standards for process validation throughout the product lifecycle, which covers execution, documentation, and deviation management, as well as Genentech's requirements for determining and verifying product specifications to ensure consistency. These protocols also include Genentech's quality testing standards to ensure Genentech is in compliance with regulatory requirements.

ee.    Manufacturing Protocols to Ensure Product Purity:  Genentech developed, refined, and implemented numerous manufacturing protocols to ensure the high quality of its drug substances and drug products by preventing contamination through the drug lifecycle. These confidential protocols lay out the strategy, requirements, and activities necessary to validate the sterility of the drug product process, including by maintaining sterile work areas.

COUNT ONE:  (18 U.S.C. § 1832(a)(5) – Conspiracy to Commit Theft of Trade Secrets)

10.    The factual allegations contained in Paragraphs 1 through 9 are realleged and incorporated as if fully set forth here.

INDICTMENT                                    8

11. Beginning in approximately 2012 and continuing to at least October 2017, in the Northern District of California and elsewhere, the defendants

XANTHE LAM,
ALLEN LAM and
JOHN CHAN,

together with others known and unknown to the Grand Jury, intending to convert a trade secret that was related to a product and service used in and intended for use in interstate and foreign commerce to the economic benefit of someone other than the owner of that trade secret, and knowing and intending that the offense would injure the owner of that trade secret, conspired:

a. knowingly to steal, and without authorization appropriate, take, carry away, conceal, and by fraud, artifice, and deception obtain trade secrets belonging to Genentech;

b. knowingly and without authorization to copy, duplicate, sketch, draw, download, upload, alter, photocopy, replicate, transmit, deliver, send, communicate, and convey trade secrets belonging to Genentech; and

c. knowingly and without authorization to receive, buy, and possess trade secrets belonging to Genentech, knowing the same to have been stolen and appropriated, obtained, and converted without authorization.

Manner and Means of the Conspiracy

12. Defendants and others conspired to steal, as prohibited by 18 U.S.C. §§ 1832(a)(1)-(3), trade secrets from Genentech and use them to create biosimilars of Genentech biologics, primarily at JHL Biotech ("JHL"). To accomplish this, XANTHE LAM and ALLEN LAM communicated with JHL employees, many of whom were former Genentech employees, to facilitate the transfer of Genentech's (a) proprietary analytical methods for ensuring drug safety and efficacy; (b) processes for formulating and testing its products for quality assurance; and (c) procedures and protocols for setting up, calibrating, and maintaining manufacturing equipment and facilities.

13. Since JHL's inception as a company, its founders solicited XANTHE LAM and ALLEN LAM to help JHL develop biosimilars designed to compete directly with Genentech's products Rituxan, Pulmozyme, Herceptin, and Avastin. ALLEN LAM agreed to serve as a consultant for JHL in 2013 in exchange for fees and founder stock options. XANTHE LAM, while still employed by Genentech,

INDICTMENT                                          9

1    secretly began working directly for JHL by transferring Genentech trade secrets to ALLEN LAM for use
2    by JHL.

3        14.    In December 2013, XANTHE LAM spent four weeks at JHL facilities in Taiwan without
4    informing or obtaining approval from any appropriate manager at Genentech. In fact, when XANTHE
5    LAM found out that a former Genentech supervisor would be in attendance with XANTHE LAM at
6    JHL's opening ceremony, XANTHE LAM specifically requested one of JHL's founders to not disclose
7    that she was at JHL "for formulation development, otherwise people at [Genentech] will know." During
8    her time at JHL, XANTHE LAM had her Genentech-issued laptop with her, thereby allowing her to
9    access Genentech's password-protected document repository.

10       15.    Upon XANTHE LAM's return from JHL, she continued downloading, collecting, and
11   transferring Genentech confidential documents relating to formulation development and raw material
12   management in order to assist ALLEN LAM with his consulting assignments at JHL.  In early 2014,
13   XANTHE LAM caused family friend CHAN to be hired by JHL to work on formulation development.
14   CHAN was hired in February 2014 after a JHL founder asked XANTHE LAM to conduct a formal
15   interview of CHAN, with the understanding that XANTHE LAM would be his direct supervisor.
16   Subsequently from May 2014 until November 2016, XANTHE LAM and CHAN spoke nearly every
17   week.  During this time, XANTHE LAM provided a Genentech confidential document to CHAN
18   through ALLEN LAM with the explicit instructions: "don't show it to others."

19       16.    Until XANTHE LAM's employment termination in the fall of 2017, she continued to
20   download and provide Genentech proprietary information to JHL.

21                                    Overt Acts

22       17.    In furtherance of the conspiracy and to effect its objects, in the Northern District of
23   California and elsewhere, the defendants committed, among others, the overt acts alleged in Counts 2
24   through 27, below.

25       All in violation of Title 18, United States Code, Section 1832(a)(5).
26   ///
27   ///
28   ///

INDICTMENT                           10

COUNTS TWO THROUGH TWENTY-SEVEN: (18 U.S.C. §§ 1832(a)(1),(2),(3), & 2 – Theft of Trade Secrets; Aiding and Abetting)

18.     The factual allegations contained in Paragraphs 1 through 17 are realleged and incorporated as if fully set forth here.

19.     On the dates set forth below, in the Northern District of California and elsewhere, the defendants listed in the separate counts below, together with others known and unknown to the Grand Jury, intending to convert a trade secret that was related to a product and service used in and intended for use in interstate and foreign commerce to the economic benefit of anyone other than the owner of that trade secret, and knowing and intending that the offense would injure the owner of that trade secret, as specifically alleged in each of the Counts 2 through 27 below:

a.     knowingly stole, and without authorization appropriated, took, carried away, concealed, and by fraud, artifice, and deception obtained trade secrets belonging to Genentech;

b.     knowingly and without authorization copied, duplicated, sketched, drew, downloaded, uploaded, altered, photocopied, replicated, transmitted, delivered, sent, communicated, and conveyed trade secrets belonging to Genentech; and

c.     knowingly and without authorization received, bought, and possessed trade secrets belonging to Genentech, knowing the same to have been stolen and appropriated, obtained, and converted without authorization:

| COUNT | DATE | DEFENDANT(S) | ACTION | TRADE SECRET |
|---|---|---|---|---|
| 2 | Sept. 22, 2017 | ALLEN LAM | Possessed on ALLEN LAM's laptop | Pulmozyme Physiochemical Characterization Methods |
| 3 | Sept. 22, 2017 | ALLEN LAM | Possessed on ALLEN LAM's laptop | Stability Assays for Pulmozyme |
| 4 | Dec. 23, 2013 | XANTHE LAM, ALLEN LAM | Email from XANTHE LAM to ALLEN LAM | Methyl Green Assay for Quantitating the Activity of Pulmozyme |
| 5 | Jan.7, 2014 | ALLEN LAM | Email from ALLEN LAM to JHL | Methyl Green Assay for Quantitating the Activity of Pulmozyme |
| 6 | Dec. 23, 2013 | XANTHE LAM, ALLEN LAM | Email from XANTHE LAM to ALLEN LAM | Methyl Green Assay for Identifying Pulmozyme |

INDICTMENT                                                                11

| COUNT | DATE | DEFENDANT(S) | ACTION | TRADE SECRET |
|---|---|---|---|---|
| 7 | Jan. 9, 2014 | XANTHE LAM, ALLEN LAM | Email from XANTHE LAM to ALLEN LAM | Neutral Sugars in Pulmozyme |
| 8 | Sept. 28, 2014 | XANTHE LAM, ALLEN LAM, and JOHN CHAN | Email from XANTHE LAM to ALLEN LAM | Use of Stedim Bags |
| 9 | May 12, 2015 | XANTHE LAM, ALLEN LAM | Email from XANTHE LAM to ALLEN LAM | Methods for Assessing the Stability of Pulmozyme |
| 10 | Sept. 22, 2017 | ALLEN LAM | Possessed on ALLEN LAM's laptop | Excipient Assays for Rituxan |
| 11 | Sept. 22, 2017 | ALLEN LAM | Possessed on ALLEN LAM's laptop | Purity Assays for Rituxan |
| 12 | Sept. 22, 2017 | ALLEN LAM | Possessed on ALLEN LAM's laptop | Quality Assays for Rituxan |
| 13 | Sept. 22, 2017 | XANTHE LAM, ALLEN LAM | Emails from XANTHE LAM to ALLEN LAM Possessed on ALLEN LAM's laptop | Peptide Mapping for Rituxan |
| 14 | Sept. 22, 2017 | XANTHE LAM, ALLEN LAM | Emails from XANTHE LAM to ALLEN LAM Possessed on ALLEN LAM's laptop | Glycan Assays for Rituxan |
| 15 | Sept. 22, 2017 | XANTHE LAM, ALLEN LAM, | Emails from XANTHE LAM to ALLEN LAM Possessed on ALLEN LAM's laptop | DNA Sequence |
| 16 | Sept. 22, 2017 | ALLEN LAM | Possessed on ALLEN LAM's laptop | Excerpts of Genentech's BLA Submission for Rituxan |
| 17 | Sept. 22, 2017 | ALLEN LAM | Possessed on ALLEN LAM's laptop | Identity Assays for Herceptin |
| 18 | Sept. 22, 2017 | ALLEN LAM | Possessed on ALLEN LAM's laptop | Purity Assays for Herceptin |
| 19 | Sept. 22, 2017 | ALLEN LAM | Possessed on ALLEN LAM's laptop | Stability Assays for Herceptin |
| 20 | May 17, 2014 | XANTHE LAM, ALLEN LAM | Email from XANTHE LAM to ALLEN LAM | Assays to Assure Herceptin Quality |
| 21 | Sept. 22, 2017 | ALLEN LAM | Possessed on ALLEN LAM's laptop | Identity Assays for Avastin |
| 22 | Sept. 22, 2017 | ALLEN LAM | Possessed on ALLEN LAM's laptop | Sterility Test Procedures for Genentech Products |
| 23 | Sept. 3, 2014 | ALLEN LAM | Email from ALLEN LAM to ALLEN LAM | Out-of-Specification Requirements |

INDICTMENT                              12

| COUNT | DATE | DEFENDANT(S) | ACTION | TRADE SECRET |
|-------|------|--------------|--------|--------------|
| 24 | April 16, 2014 | XANTHE LAM, ALLEN LAM | Email from XANTHE LAM to ALLEN LAM | Good Documentation Practices |
| 25 | Feb.13 to April 21, 2014 | XANTHE LAM, ALLEN LAM | Emails from XANTHE LAM to ALLEN LAM | Raw Material Management |
| 26 | July 3, 2014 | XANTHE LAM, ALLEN LAM | Email from XANTHE LAM to ALLEN LAM | Procedures to Assure Quality Control |
| 27 | Sept. 17, 2014 | ALLEN LAM | Email from ALLEN LAM to himself | Qualitative Appearance of Liquid Samples and Lyophilized Vials |

Each in violation of Title 18 United States Code, Sections 1832(a)(1), (2), (3), and 2.

COUNT TWENTY-EIGHT: (18 U.S.C. § 1832(a)(5) – Conspiracy to Commit Theft of Trade Secrets)

20.     The factual allegations contained in Paragraphs 1 through 19 are realleged and incorporated as if fully set forth here.

21.     Beginning in July 2017 and continuing to at least September 2017, in the Northern District of California and elsewhere, the defendants

XANTHE LAM and
JAMES QUACH,

together with others known and unknown to the Grand Jury, intending to convert a trade secret, that was related to a product and service used in and intended for use in interstate and foreign commerce, to the economic benefit of anyone other than the owner of that trade secret, and knowing and intending that the offense would injure the owner of that trade secret, conspired:

a.     knowingly to steal, and without authorization appropriate, take, carry away, conceal, and by fraud, artifice, and deception obtain trade secrets belonging to Genentech;

b.     knowingly and without authorization to copy, duplicate, sketch, draw, download, upload, alter, photocopy, replicate, transmit, deliver, send, communicate, and convey trade secrets belonging to Genentech; and

c.     knowingly and without authorization to receive, buy, and possess trade secrets belonging to Genentech, knowing the same to have been stolen and appropriated, obtained, and converted without authorization.

INDICTMENT                                          13

1

## Manner and Means of the Conspiracy

2      22.     The defendants and others conspired to steal, as prohibited by 18 U.S.C. §§ 1832(a)(1)-

3  (3), trade secrets from Genentech for use by QUACH during his employment at JHL.

4      23.     In the summer of 2017, XANTHE LAM referred former Genentech employee QUACH

5  to JHL for employment as an engineering manager.  After QUACH received an employment  offer from

6  JHL and was no longer employed by Genentech, XANTHE LAM allowed QUACH to use XANTHE

7  LAM's login credentials to access Genentech secure databases of manufacturing, equipment, and

8  facilities policies and procedures on at least three different occasions in July 2017, to "refresh [him]self"

9  regarding some of the documents.  QUACH downloaded documents containing trade secrets from the

10  Genentech password-protected document repository for his work at JHL.  XANTHE LAM also

11  downloaded documents containing trade secrets from the Genentech password-protected document

12  repository for QUACH at QUACH's request.

13

## Overt Acts

14      24.     In furtherance of the conspiracy and to effect its objects, in the Northern District of

15  California and elsewhere, the defendants committed, among others, the overt acts alleged in Counts 29

16  through 32 below.

17      All in violation of Title 18, United States Code, Section 1832(a)(5).

18
COUNTS TWENTY-NINE THROUGH THIRTY-TWO:  (18 U.S.C. §§ 1832(a)(1),(2),(3), & 2 – Theft

19  of Trade Secrets; Aiding and Abetting)

20      25.     The factual allegations contained in Paragraphs 1 through 24 are realleged and

21  incorporated as if fully set forth here.

22      26.     On the dates set forth below, in the Northern District of California and elsewhere, the

23  defendants listed in the separate counts below, together with others known and unknown to the Grand

24  Jury, intending to convert a trade secret, that was related to a product and service used in and intended

25  for use in interstate and foreign commerce, to the economic benefit of anyone other than the owner of

26  that trade secret, and knowing and intending that the offense would injure the owner of that trade secret,

27  as specifically alleged in each of the Counts 29 through 32 below:

28          a.     knowingly stole, and without authorization appropriated, took, carried away,

INDICTMENT                                    14

concealed, and by fraud, artifice, and deception obtained trade secrets belonging to Genentech;

b.  knowingly and without authorization copied, duplicated, sketched, drew, downloaded, uploaded, altered, photocopied, replicated, transmitted, delivered, sent, communicated, and conveyed trade secrets belonging to Genentech; and

c.  knowingly and without authorization received, bought, and possessed trade secrets belonging to Genentech, knowing the same to have been stolen and appropriated, obtained, and converted without authorization:

| COUNT | DATE | DEFENDANTS | ACTION | TRADE SECRETS |
|---|---|---|---|---|
| 29 | July 9, 2017 | XANTHE LAM, QUACH | Downloaded from GENENTECH's password-protected document repository | Manufacturing protocols to: Maintain Equipment, Manage Risks, & Ensure Product Purity |
| 30 | July 16, 2017 | XANTHE LAM, QUACH | Downloaded from GENENTECH's password-protected document repository | Manufacturing protocols to: Maintain Facilities, Manage Risks, Ensure Product Purity, & for Preventing Contamination |
| 31 | July 26, 2017 | XANTHE LAM, QUACH | Downloaded from GENENTECH's password-protected document repository | Manufacturing protocols to: Maintain Equipment, Maintain a Sterile Environment, Ensure Product Purity, & for Preventing Contamination |
| 32 | Aug. 13, 2017 | XANTHE LAM, QUACH | Downloaded from GENENTECH's password-protected document repository | Manufacturing protocols to: Maintain Facilities & Maintain a Sterile Environment |

Each in violation of Title 18, United States Code, Sections 1832(a)(1),(2),(3) & 2.

COUNT THIRTY-THREE:  (18 U.S.C. § 1030(b) – Conspiracy to Commit Computer Fraud and Abuse)

27.  The factual allegations contained in Paragraphs 1 through 27 are realleged and incorporated as if fully set forth herein.

28.  On or about and between July 2017 and August 2017, in the Northern District of California and elsewhere, the defendants

XANTHE LAM and
JAMES QUACH,

INDICTMENT                    15

1 | together with others known and unknown to the Grand Jury, did knowingly and willfully conspire and

2 | agree together, with each other, and with others known and unknown to the grand jury, to commit

3 | computer fraud and abuse, that is, to access protected computers without authorization and to exceed

4 | authorized access to protected computers, and to obtain thereby information from protected computers,

5 | for the purpose of commercial advantage and private financial gain, in furtherance of a criminal act in

6 | violation of the laws of the United States, namely Theft of Trade Secrets in violation of 18 U.S.C. §

7 | 1832, and where the value of the information did, and would if completed, exceed $5,000.

8 |                                   Manner and Means of the Conspiracy

9 |          29.     It was part of the conspiracy that the defendants, XANTHE LAM and QUACH, and

10 | others known and unknown to the grand jury agreed to participate in QUACH's access Genentech's

11 | computers without authorization and exceeding authorized access, in order to steal trade secrets.

12 |          30.     The objects of the conspiracy were carried out, in part, as alleged in Paragraphs 22 and

13 | 23, above.

14 |                                           Overt Acts

15 |          31.     In furtherance of the conspiracy and to effect its objects, in the Northern District of

16 | California and elsewhere, the defendants committed, among others, the overt acts alleged in Counts 34

17 | through 36 below.

18 |          In violation of Title 18, United States Code, Section 1030(b).

19 |
20 | COUNTS THIRTY-FOUR THROUGH THIRTY-SIX: (18 U.S.C. § 1030(a)(2)(C), (c)(2)(B)(i), (ii) & (iii) & 2 – Computer Fraud and Abuse; Aiding and Abetting)

21 |          32.     The factual allegations contained in Paragraphs 1 through 30 are realleged and

22 | incorporated as if fully set forth herein.

23 |          33.     On or about the dates set forth in the separate counts below, in the Northern District of

24 | California and elsewhere, the defendants

25 |                                       XANTHE LAM and
26 |                                       JAMES QUACH

27 | intentionally accessed a computer without authorization and exceeding authorized access, and obtained

28 | information from a computer that was used in and affected interstate and foreign commerce and

INDICTMENT                                    16

communication, and the offense was to obtain information from protected computers, for the purpose of commercial advantage and private financial gain, in furtherance of a criminal act in violation of the laws of the United States, namely Theft of Trade Secrets in violation of 18 U.S.C. § 1832, and where the value of the information did, and would if completed, exceed $5,000, that is, the defendants accessed Genentech's computer network without authorization in order to steal scientific and technical documents.

| COUNT | DATE | DEFENDANT(S) | ACTION | DOCUMENTS DOWNLOADED |
|---|---|---|---|---|
| 34 | July 9, 2017 | XANTHE LAM, QUACH | Downloaded from Genentech's password-protected document repository | Manufacturing protocols to: Maintain Equipment, Manage Risks, & Ensure Product Purity |
| 35 | July 16, 2017 | XANTHE LAM, QUACH | Downloaded from Genentech's password-protected document repository | Manufacturing protocols to: Maintain Facilities, Manage Risks, Ensure Product Purity, & for Preventing Contamination |
| 36 | July 26, 2017 | XANTHE LAM, QUACH | Downloaded from Genentech's password-protected document repository | Manufacturing protocols to: Maintain Equipment, Maintain a Sterile Environment, Ensure Product Purity, & for Preventing Contamination |

Each in violation of Title 18, United States Code, Sections 1030(a)(2)(C), (c)(2)(B)(i), (ii), & (iii).

FORFEITURE ALLEGATION:  (18 U.S.C. §§ 982, 1030, 1834 and 2323 – Proceeds and Property Involved in Computer Fraud and Abuse and Theft of Trade Secrets)

     34.    The allegations contained in Counts 1 through 37 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. §§ 982(a)(2)(B), 1030(i), and 2323(b).

     35.    As a result of conviction on one or more of the felony offenses set forth in Counts 1 through 27 of this Indictment, defendants,

XANTHE LAM,
ALLEN LAM, and
JOHN CHAN,

shall forfeit the following property, real or personal, to the United States:

INDICTMENT                                                 17

1     (1)    Any article, the making or trafficking of which, is prohibited under 18 U.S.C. Chapter 90;

2     (2)    Any property used, or intended to be used, in any manner or part to commit or facilitate a

3 violation of 18 U.S.C. Chapter 90; and

4     (3)    Any property constituting or derived from any proceeds obtained directly or indirectly as

5 a result of a violation of 18 U.S.C. Chapter 90.

6     36.    As a result of conviction on one or more of the felony offenses set forth in Counts 28

7 through 32 of this Indictment, defendants:

8
XANTHE LAM and
9
JAMES QUACH,

10 shall forfeit to the United States of America:

11     (1)    Any article, the making or trafficking of which, is prohibited under 18 U.S.C. Chapter 90;

12     (2)    Any property used, or intended to be used, in any manner or part to commit or facilitate a

13 violation of 18 U.S.C. Chapter 90; and

14     (3)    Any property constituting or derived from any proceeds obtained directly or indirectly as

15 a result of a violation of 18 U.S.C. Chapter 90.

16     37.    As a result of conviction on one or more of the felony offenses set forth in Counts 33

17 through 36 of this Indictment, defendants:

18
XANTHE LAM and
19
JAMES QUACH,

20 shall forfeit to the United States of America:

21     (1) pursuant to 18 U.S.C. §§ 982(a)(2)(B) and 1030(i), any property, real or personal,

22 constituting, or derived from, proceeds obtained directly or indirectly as a result of such offense; and

23     (2) pursuant to 18 U.S.C. § 1030(i), any personal property that was used or intended to be used to

24 commit or to facilitate the commission of such offense.

25     38.    If any of the property described above, as a result of any act or omission of the

26     defendants:

27          a.    cannot be located upon the exercise of due diligence;

28          b.    has been transferred or sold to, or deposited with, a third party;

1      c.      has been placed  beyond the jurisdiction of the court;

2      d.      has been substantially diminished  in value; or

3      e.      has been commingled with other property which cannot be divided without

4      difficulty, the United States of America shall be entitled to forfeiture of substitute property

5      pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 2323(b).

6      All pursuant to 18 U.S.C. §§ 853, 982, 1030, 1834, and 2323 and Fed. R. Crim. P. 32.2.

7

8      DATED:                                      A TRUE BILL.
       *10/25/18*

9

10                                                 _____
                                                   FOREPERSON

11

12     ALEX G. TSE
       United States Attorney

13     *John H. Hemann*

14     JOHN H. HEMANN
       Deputy Chief, Criminal Division

15

16     (Approved as to form: _____)

17                           AUSAs Parrella/Kane

18

19

20

21

22

23

24

25

26

27

28

INDICTMENT                         19