WILLIAM L. OSTERHOUDT (SBN 43021)
Law Office of William L. Osterhoudt
135 Belvedere Street
San Francisco, CA 94117
Telephone: (415) 664-4600
Facsimile: (415) 664-4691
Email: osterhoudt@aol.com

K. ALEXANDRA McCLURE (SBN 189679)
Law Office of Alexandra McClure
214 Duboce Avenue
San Francisco, CA 94103
Telephone: (415) 814-3397
Facsimile: (415) 255-8631
Email: alex@alexmcclurelaw.com

MICHAEL STEPANIAN, ESQ. (SBN37712)
Law Offices of Michael Stepanian
819 Eddy Street
San Francisco, CA 94109
Telephone: (415) 771-6174
Facsimile: (415) 474-3748
Email: mstepanian@sbcglobal.net

DANIEL OLMOS (SBN 235319)
NOLAN BARTON & OLMOS LLP
600 University Avenue
Palo Alto, CA 94301
Telephone: (650) 326-2980
Facsimile: (650) 326-9704
Email: dolmos@nbo.law

Attorneys for Defendants
XANTHE LAM and ALLEN LAM

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO VENUE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                             Plaintiff,<br><br>vs.<br><br>XANTHE LAM, et al,<br><br>                             Defendants. | No.: CR 18-527 WHA<br><br>**CORRECTED NOTICE BY XANTHE LAM AND ALLEN LAM OF MOTION TO SUPPRESS EMAILS AND MATERIALS SEIZED FROM THEIR EMAIL ACCOUNTS AND THEIR HOME; DECLARATION OF COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**<br><br>Date:   March 17, 2020<br>Time:  2:00 p.m.<br>Court:  Hon. William H. Alsup |

TO:   THE UNITED STATES ATTORNEY FOR THE NORTHERN DISTRICT OF CALIFORNIA;
ASSISTANT UNITED STATES ATTORNEYS KYLE WALDINGER AND SHEILA
ARMBRUST:

PLEASE TAKE NOTICE that on March 17, 2020, at the hour of 2:00 p.m., or as soon
thereafter as the matter may be heard before the above-entitled court, defendants XANTHE LAM
and ALLEN LAM, by counsel, will move and hereby do move the Court for an order excluding from
evidence at trial the following items:

1. All emails and other materials seized from Google Inc. pursuant to a search warrant
issued by Magistrate Judge Howard Lloyd on June 12, 2017; and

2. All materials seized from Mr. And Mrs. Lam's home at 662 Orchid Dr. pursuant
to a search warrant issued by Chief Magistrate Judge Joseph C. Spero on September 6, 2017; and

3. All materials, items and evidence derived from the above searches, including but not
limited to a search warrant issued by Magistrate Judge Elizabeth Laporte on January 3, 2018, for
Office # 562112, 500 Forbes Blvd., South San Francisco, CA 94080. (the office of Xanthe Lam).

This motion is made on the grounds that the above search warrants were overbroad,
lacked particularity, and failed to establish probable cause and thereby violated the Fourth
Amendment to the United States Constitution. The motions to suppress evidence seized from 662
Orchid is further based on the ground that the government's applications for the warrant improperly
included information seized during prior unlawful search of the Lams' email accounts.

This Motion is made pursuant to the Fourth Amendment to the United States
Constitution and Federal Rules of Criminal Procedure 12 and 41.

This Motion is based on this notice of motion and motion, the memorandum of points

and authorities and declaration of counsel attached hereto, the docket, files and records of this case, and such other evidence and argument, oral or documentary, as may be presented at the hearing of this motion.

Dated: February 3, 2020.                                     Respectfully Submitted,

                                                             /s/ William L. Osterhoudt
                                                             K. ALEXANDRA McCLURE
                                                             WILLIAM L. OSTERHOUDT
                                                             Attorneys for Defendant
                                                             XANTHE LAM

                                                             /s/ Michael Stepanian
                                                             DANIEL OLMOS
                                                             MICHAEL STEPANIAN
                                                             Attorneys for Defendant
                                                             ALLEN LAM

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF COUNSEL FOR XANTHE LAM

I, K. Alexandra McClure, hereby declare:

1.  I am an attorney duly licensed to practice law in this district and before this Court. Mr. William L. Osterhoudt and I are counsel for defendant XANTHE LAM in the above-captioned case.

2.  Filed with Mrs. Lam's motion to suppress are the following exhibits, which are true and correct copies of documents disclosed to the defense by the United States Attorney in this case:

    a.  EXHIBIT A - a June 12, 2017 search warrant authorizing a search of Mrs. Lam's email account bearing the address "mlsheung@gmail.com";

    b.  EXHIBIT B - the government's application for the June 12, 2017 search warrant;

    c.  EXHIBIT C - a September 6, 2017 search warrant authorizing a search of Mrs. Lam's home at 662 Orchid Dr. in South San Francisco, California

    d.  EXHIBIT D - the government's application for the September 6, 2017 search warrant.

I submit this corrected motion to rectify clerical and formatting errors in the original motion filed on January 30, 2020.  The substance of the motion is the same. I hereby declare, under penalty of perjury under the laws of the United States, that the foregoing is true to the best of my knowledge and belief. Executed the 3rd day of February 2020 at San Francisco, California.                          Respectfully Submitted,

/s/ K. Alexandra McClure
K. ALEXANDRA McCLURE

## <u>DECLARATION OF COUNSEL FOR ALLEN LAM</u>

I, Michael Stepanian, do hereby declare:

1. I am an attorney duly licensed to practice law in this district and before this Court. Daniel B. Olmos and I are counsel for defendant ALLEN LAM in the above-captioned case.

2. Filed with Mr. Lam's motion to suppress are the following exhibits, which are true and correct copies of documents disclosed to the defense by the United States Attorney in this case:

   a. EXHIBIT A – a June 12, 2017 search warrant authorizing a search of Mr. Lam's email account bearing the address "Allenlam2@gmail.com";

   b. EXHIBIT B – the government's application for the June 12, 2017 search warrant;

   c. EXHIBIT C – a September 6, 2017 search warrant authorizing the search of Mr. Lam's home at 662 Orchid Drive, South San Francisco, California.

   d. EXHIBIT D – the government's application for the September 6, 2017 search warrant.

I declare under penalty of perjury that the foregoing is true and correct, except as to those matters stated upon information and belief, and as to those matters, I believe them to be true. Executed in San Francisco, California on January 27, 2020 by:

*/s/ Michael Stepanian*
MICHAEL STEPANIAN

## MEMORANDUM OF POINTS AND AUTHORITIES

### STATEMENT OF FACTS

**A.**   **THE JUNE 2017 EMAIL SEARCH WARRANT**

On June 12, 2017, FBI agent Frank Reid applied to U.S. Magistrate Judge Howard Lloyd for a search warrant for stored emails in Xanthe Lam's and Allen Lam's email accounts bearing the address "mlsheung@gmail.com and Allenlam2@gmail.com.  *See* Exhibits A & B (June 13, 2017 warrant application).  On its face, the warrant authorizes the government to search property located at "Email accounts: mlsheung@gmail.com & Allenlam2@gmail.com at Google 1600 Amphitheater Parkway Mountain View, CA."  Exhibit A.  "Attachment B" to the search warrant authorized Google employees to seize from the two email accounts "all electronic mail and chat sessions" stored the accounts from the time period of January 2, 2012, though the date when the warrant was served, and to provide copies of that data to the FBI.  *See* Exhibit A at Attachment B, section II(a). The attachment also authorized Google employees to seize all "transactional  information" concerning the accounts, including location data, IP addresses and email addresses. *See* Exhibit A, Attachment B, section II(c). The Attachment B document limited the  materials that could be copied by law enforcement agents to "[a]ll information…that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, Section 1832, from January 1,2012, through the  present." Exhibit A, Attachment B, section III. The attachment specifically notes that such information includes "any communications" related to Genentech, where Mrs. Lam worked, or JHL, Eusol Biotech, Mycenax Biotech, AP Biosciences and Obi Pharma, all "communications" relating to "consulting services," any "communications" with other    people concerning biopharmaceutical medicines (the field in which both Xanthe and  Allen Lam  worked), and all "records" that might indicate who used the email accounts.  *Id.*

The affidavit submitted in support of the warrant indicates that the warrant was obtained in connection with the FBI's investigation of Xanthe Lam "and others" concerning possible misappropriation of trade secrets in violation of section 1832. The affidavit goes on to state that Mrs. Lam "with the assistance of her husband and co-conspirator ALLEN LAM" misappropriated "the highly confidential information" and provided it to Genentech's competitors. *See* Exhibit B at pp. 6, 9.

According to the affidavit, Genentech employees informed the FBI that in "early 2013, Ms. Lam "began downloading highly confidential Genentech documents, replete with the company's trade secrets." *Id.* at p.18 ¶ 34. According to Genentech, Mrs. Lam downloaded these "confidential" documents to the work laptop Genentech had provided to her. *Id.*

The affidavit further indicates that Mr. and Mrs. Lam worked for another biotech company, JHL Biotech, Inc. ("JHL"), in December 2013. Exhibit B at p.18 ¶ 35 (beginning in 2013 Mrs. Lam "worked directly for" JHL), p.22 ¶ 50 ("Lam and Chan first emailed about JHL in December 2013"), p.19 ¶ 40 (Lam emailed that she "will spend four weeks at JHL" in December 2013).

According to the affiant, at some point after Mrs. Lam downloaded files to her Genentech laptop, she created folders and files on her work computer with names that had "JHL" appended to the name of the file. *See* Exhibit B, p.18 ¶ 36. Genentech employees informed the FBI that these files included a mix of "GENENTECH confidential documents" and "internal JHL documents". *Id.*

The affidavit also describes how Mrs. Lam emailed certain documents to her husband, Allen Lam, who worked as a consultant for JHL. According to the affiant, on September 28, 2014, Xanthe Lam used her Genentech email account to send her husband a "highly confidential GENENTECH Technical Report" named "TR0467.pdf", which was found in a folder on Mrs. Lam's work laptop named "Pulmozyme_JHL". *See* Exhibit B at pp. 21-22, ¶¶46-47. The TR0467.pdf file

had been downloaded to Mrs. Lam's work laptop on August 27, 2014. *Id.* The report "concerned the compatibility of Pulmozyme with Stedim bags for storage, shipping, and handling." *Id.* at ¶47.

The affidavit describes how Genentech employees conducted additional searches of Mrs. Lam's laptop and internet and email activity. *See* Exhibit B, p.24 at ¶58. According to Genentech employees, these searches revealed than on March 17, 2014, Mrs. Lam used her Gmail account to download a file named "JHL1101 Formulation SEC 5C, 20C, 25C3M(1).pptx", which Genentech indicated was a file that "relate[d] to the formulation and testing of a JHL's "RITUXAN biosimilar." *See* Exhibit B, p.25 at ¶59. Similarly, Genentech informed the FBI that on July 6, 2015, Mrs. Lam downloaded from her Gmail account a file named "20150706 JHL 1101 stability at 5C for Innovator and JHL Formulation.pptx", which again related to JHL's "RITUXAN biosimilar." *Id.* at ¶60. On October 29, 2013, Mrs. Lam emailed herself a PowerPoint presentation titled "JHL 1101.ppt", which was a presentation concerning JHL's development of a Rituxan Biosimilar. *Id.* at ¶61. In July of 2015, Ms. Lam downloaded from her Gmail account several internal JHL documents pertaining to JHL's Pulmozyme biosimilar, JHL1922. *Id.* at ¶62.

Genentech's search of Mrs. Lam's internet history also showed that in April of 2015, she "communicated with JHL" concerning the company's launch of a new drug, JHL2109, that would compete with Genentech's drug Tecentriq. *See* Exhibit B p.26 at ¶63. According to Genentech, three months earlier in January 2017, Mrs. Lam downloaded to her work computer a "confidential presentation related to Genentech's development of Tecentriq." *Id.* at ¶ 64.

In conclusion, the affiant notes that Genentech believed that the Lams had repeatedly violated their employment agreements. *See e.g.*, ¶¶72-74. The affidavit also notes that an unidentified Genentech "scientist" and an unidentified "subject matter expert" had offered the legal opinion that "many of the files downloaded by Lam… was trade secret information developed by

Genentech."  Exhibit B, p.37 at ¶96.  The affiant did not indicate which particular documents the Genentech scientist and  "subject matter expert" believed contained trade secrets. The affidavit also offers no information concerning the alleged expertise of the unidentified Genentech employee and  "subject matter expert".

**B.    THE SEPTEMBER 2019 SEARCH WARRANT FOR THE LAMS' HOME AT 662 ORCHID**

After receiving materials from the search of the Lams' Gmail accounts, on September 6, 2017, FBI agent Reid applied to Chief U.S. Magistrate Judge Joseph Spero for a search warrant for the Lams' home at 662 Orchid Drive. *See* Exhibit C. "Attachment B" to the search warrant authorized law enforcement to seize all "evidence, fruits or instrumentalities" of violations of "section 1832" that occurred from January 1, 2009, though the date of the warrant. *See* Exhibit C, at Attachment B. The attachment further indicated that the target crimes were more fully described "in the search warrant affidavit."  However, we have not located documents showing that the affidavit was provided to searching agents for use in limiting the search or provided it to Mrs. Lam who was present when the search was conducted. *See United States v. McGrew,* 122 F.3d 847 (9th Cir. 1997) (court found search warrant did not specify any type of criminal activity that was suspected or any type of evidence that was sought. Court also held that, although the affidavit was expressly incorporated into the search warrant, the government admitted that its agents never served a copy of the affidavit on defendant. The court also determined that the failure to show defendant the affidavit was contrary to the warrant's purpose of informing her what items the officers that executing the warrant could have seized.).

Attachment B to the warrant "more specifically" described the items to be seized as: (1) "all communications, records and documents" related to Genentech; (2)  "all communications, records and

documents" related to JHL, Eusol Biotech, Mycenax Biotech, AP Biosciences, and Obi Pharma; (3) "all communications, records and documents" relating to "consulting services" in the industry; (4) all "communications" preserved in any form, concerning Genentech; (5) all of the Lams' financial records; and (6) "any digital device" used in connection with a section 1832 violation, including all evidence of who used, owned or controlled the device in the eight-year time period covered by the warrant and all records of internet activity conducted over the device. *See* Exhibit C, Attachment B, pp. 2-4.

The affidavit submitted in support of the warrant indicated the warrant was obtained in connection with Genentech's investigation of Xanthe and Allen Lam concerning possible misappropriation of trade secrets in violation of section 1832. *See* Exhibit D, pp. 14-15 at ¶¶ 35-37. According to the affiant, Genentech employees informed the FBI that in "early 2013", Mrs. Lam "began downloading highly confidential Genentech documents, replete with the company's trade secrets." *Id.* at p. 15, ¶ 37. According to Genentech, Mrs. Lam downloaded these "confidential" documents to the work laptop Genentech provided to her. *Id.*

The first 66 paragraphs of the affidavit are essentially identical to the government's representations in the June 2017 email search warrant affidavit. The affidavit then discusses the results of the FBI's search of the Lams' private email accounts. *See* Exhibit D at p.21.

The affidavit indicates the searches of the Lams' emails accounts revealed emails between Xanthe and Allen Lam and representatives of JHL beginning in May of 2012. *See* Exhibit D, pp.22-23 at ¶68. These emails, the affidavit states, include evidence of the Lams' "downloading and distributing Genentech's highly confidential documents and data, including trade secret information." *Id.*

The affidavit specifies three incidents in which Allen or Xanthe Lam utilized their Gmail

accounts to send documents allegedly containing trade secrets. On January 9, 2014, Mrs. Lam emailed her husband a file named "Q8169.pdf". *See* Exhibit D, p. 28 at ¶81. The affiant noted that the document was marked "confidential" but did not further describe the content of the document. *Id.*

On February 12, 2014, Allen Lam sent Xanthe Lam a number of questions concerning "raw materials" suppliers, testing and purchasing. *Id.* at ¶ 82. The next day, Xanthe emailed Allen 11 documents she described as related to "raw material management policies". *Id.* The affidavit states that 8 of the 11 attachments were marked "confidential" but does not further describe the documents. *Id.*

On July 3, 2014, Xanthe Lam used her email account to send her husband a file named "Q12121.pdf". Exhibit D, pp.28-29 at ¶84. Again, the affiant indicated that the document was marked "Confidential" by Genentech but did not further describe the document. *Id.*

Concerning the newly seized emails, the affiant concluded, in boilerplate statements that also appeared in the June search warrant affidavit, that in the opinion of unspecified representatives and employees of Genentech, "these documents" were "replete with the company's trade secret information." *See* Exhibit D. p.30 at ¶85.

## ARGUMENT AND AUTHORITIES

I.   **THE GOVERNMENT FAILED TO ESTABLISH PROBABLY CAUSE THAT THE GMAIL ACCOUNTS WOULD CONTAIN EVIDENCE OF THEFT OF TRADE SECRETS**

   A.   **Legal Standards**

"The task of the issuing magistrate is to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. The duty of a reviewing court is simply to

ensure that the magistrate had a 'substantial basis for…[concluding]' that probable cause existed." *Illinois v. Gates,* 462 U.S. 213, 238-239 (1983); *see also United States v. Gunter*, 551 F.3d 472, 479 (6th Cir. 2009). "...[R]eviewing courts will not defer to a warrant based on an affidavit that does not provide the magistrate with a substantial basis for determining the existence of probable cause. Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *United States v. Leon*, 468 U.S. 897, 915 (1984) (internal quotations and citations omitted). "The government bears the burden of showing probable cause in connection with a search warrant." *United States v. Abboud*, 438 F.3d 554, 569 (6th Cir. 2006); *see also* Fed. R.Crim. Pro. 41(c).

### B.  Analysis

The government's affidavit in support of the search warrant for Mrs. Lam's email account fails to demonstrate a connection between Mrs. Lam's "Gmail" email account and a violation of 18 U.S.C. §1832, the target trade secrets offense.  Though the affiant asserts that Mrs. Lam had downloaded "highly confidential Genentech documents, replete with the company's trade secrets," he also acknowledges in the affidavit that Mrs. Lam downloaded the documents to her own Genentech-issued computer. Exhibit A at p.18 ¶ 34. The affidavit fails to establish how downloading Genentech files from the company's server to her Genentech laptop while employed at Genentech constitutes a violation of the trade secrets statute. Even if the affiant's conclusory statement that the unspecified files were "replete with trade secrets" were accepted as true, the affidavit does not establish that Mrs. Lam appropriated the files without authorization when she copied them to her work laptop, as section 1832 requires. *See* 18 U.S.C. §1832.  And of course, the act of merely stamping documents or files "confidential" does not render them trade secrets. Id.  If, for example, the materials marked "confidential" are easily accessible on the internet or otherwise publicly available, they are not by law trade secrets. 18 U.S.C. Section 1832.

As to those single Genentech files the government claims Mrs. Lam transferred to JHL or her husband via email, the affidavit fails to establish that the transferred files included trade secrets. The affiant merely claimed that the file was a "highly confidential GENENTECH Technical Report" named "TR0467.pdf", which was found in a folder on Mrs. Lam's work laptop named "Pulmozyme_JHL". *See* Exhibit B, pp. 21-22 at ¶¶46-47. The affidavit describes the subject matter of the report as "the compatibility of Pulmozyme with Stedim bags for storage, shipping, and handling", but does not explain why or how the report about the bags constitutes a trade secret, as opposed to a file Genentech merely considered "confidential" pursuant to its internal policies. *Id.* at ¶47.

Even if one were to accept as correct the affiant's summary assertions that some of the materials Mrs. Lam downloaded to her Genentech work computer were "trade secrets", the government failed to allege in the affidavit that Mrs. Lam then used her private email account to transfer or otherwise misappropriate any such file. In sum, the government failed to establish probable cause in the affidavit that Mrs. Lam used her private email in connection with any specific violation of 18 U.S.C. §1832. Conclusory allegations without support are insufficient to state probable cause and all evidence seized pursuant to this warrant must be suppressed.

## II.  THE SEARCH WARRANTS FOR THE GMAIL ACCOUNTS AND THE LAMS' HOME WERE OVERBROAD AND LACKED PARTICULARITY AS TO THE ITEMS TO BE SEIZED

### A.  Legal Standards

The Fourth Amendment dictates that a search warrant must be sufficiently particular and not overbroad. *See, e.g.*, *Andresen v. Maryland*, 427 U.S. 463, 480 (1976); *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986).  The particularity requirement safeguards the right to be free from unbounded, general searches.  *United States v. Hillyard*, 677 F.2d 1336, 1339 (9th Cir. 1982).  A

warrant that fails to particularly describe the evidence sought is unconstitutional. *Groh v. Ramirez,* 540 U.S. 551, 559 (2004).

In *Maryland v. Garrison*, the Supreme Court discussed the importance of the particularity requirement:

> The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one "particularly describing the place to be searched and the persons or things to be seized." The manifest purpose of this particularity requirement was to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit.

480 U.S. 79, 84 (1987). The required "[s]pecificity has two aspects: particularity and breadth. [] Particularity is the requirement that the warrant must clearly state what is sought. Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based." *In re Grand Jury Subpoenas Dated Dec. 10, 1987,* 926 F.2d 847, 856-57 (9th Cir. 1991).

"The Fourth Amendment requires that the government show that it has probable cause to believe that a specific crime has been or is being committed before it may invade constitutionally protected areas" and this particularity requirement is only satisfied if the warrant identifies the particular type of evidence to be seized. *See United States v. Carneiro*, 861 F.2d. 1171, 1179 (9th Cir. 1988).

### B.  The June Search Warrant for the Gmail Accounts Lacked Specificity

Here, the supporting affidavit for the June Gmail search warrant clearly indicates that law enforcement was searching for evidence relating to alleged thefts of trade secrets that began, at the earliest, in December of 2013, when the government claims Mrs. Lam started to "work for JHL", and continued through "the summer of 2015." *See* Exhibit B, p.18 at ¶35. The resulting warrants should

have been limited to emails related to theft of trade secrets from that time period. It was not.

The warrant for the Lams' personal email accounts was overbroad in that it purports to authorize the government to seize emails from a time period not tied to the particular crimes that were the target of the warrant – the Lams' alleged of theft of trade secrets between December of 2013 and the "summer" of 2105. Instead, the warrant allowed the FBI to seize the Lams' personal emails from January 1, 2012 through June 6, 2017, *two years before and two years after* the time period when the affiant alleged the trade secret thefts under investigation occurred. *See* Exhibit A (June 12, 2017 affidavit). As this Court has previously noted, where the "date range" of a search warrant is not sufficiently limited to the time when the crime under investigation is alleged to have occurred, the warrant is "overbroad and insufficiently particular." *See United States v. Cerna*, 2010 U.S. Dist. LEXIS 145991 (N.D. Cal. 2010) (holding that where an affidavit established that there was probable cause to seize cell phone records in relation to a particular homicide, the affidavit "could not have established probable cause to seize cell phone records from nine months before the date of the [] homicide."); *see also United States v. Abboud*, 438 F.3d 554, 576 (6th Cir. 2006) (holding that a warrant covering a six-year period was invalid because probable cause only supported the seizure of evidence pertaining to a three-month period).

The Gmail search warrant in this case also lacked particularity as it authorized the agents to seize "all electronic mail and chat sessions" and "transactional information" that could be "fruits, evidence and instrumentalities" of violations of Title 18, United States Code, Section 1832." The warrant specified that these instrumentalities included any communications concerning Genentech, where Mrs. Lam worked, or the biopharmaceutical industry in which both Lams worked. The warrant further authorized the FBI to seize any and all emails that might show who was using the Gmail accounts. *See* Exhibit C, Attachment B section III. Such a broad request of the emails the

government was permitted to seize undoubtedly covered nearly every email stored in the Lams' accounts and was not limited to communications that had any bearing on alleged theft of trade secrets.

The government could have easily specified that the only emails to be seized were those relating, discussing or having attached to them certain information or files concerning Genentech's development of specific drugs, or even types of Genentech files.[1] Instead, the government sought to look through *all* of the Lams' stored electronic communications, including hundreds of highly personal emails. By failing to link the emails to be seized to the specific crimes under investigation, the warrant suffered from the same flaws as the overly broad warrant discussed by the Ninth Circuit in *United States v. Kow*:

> The warrant authorized the seizure of virtually every document and computer file at [the defendant's office]. To the extent that it provided any guidance to the officers executing the warrant, the warrant apparently sought to describe every document on the premises and direct that everything be seized. The government emphasizes that the warrant outlined fourteen separate categories of business records. However, the warrant contained no limitations on which documents within each category could be seized or suggested how they related to specific criminal activity. By failing to describe with any particularity the items to be seized, the warrant is indistinguishable from the general warrants repeatedly held by

---

[1] In an order recently issued in a related civil action, this Court formulated a much more specific definition of the trade secrets at issue in the government's investigation of the Lams: "The claimed trade secrets generally relate to Genentech's (1) validated analytical methods to test and ensure the stability, potency, purity, identity, and quality of the four biologics; (2) information regarding the development and selection of a formulation for those four biologics and Tecentriq (another Genentech biologic); (3) the compilation of documents Xanthe collected regarding the four biologics; (4) manufacturing and operation protocols, including GMP-compliant procedures; and (5) the compilation of documents Quach downloaded regarding manufacturing and operation protocols."
*Genentech, Inc. v. JHL Biotech, Inc.*, 2019 U.S. Dist. LEXIS 36140 (N.D. Cal. 2019).

> this court to be unconstitutional. . .The government could have made the warrant more particular. Most obviously, the warrant could have specified the suspected criminal conduct. Except for vague references to fraudulent transactions and possible disparities between actual and reported income, the warrant failed to give any indication of the alleged crime to which the seized documents pertained.

*Kow*, 58 F.3d at 427; s*ee also Voss v. Bergsgaard,* 774 F.2d 402, 406 (10th Cir. 1985) ("[A] warrant that simply authorizes the seizure of all files, whether or not relevant to a specified crime, is insufficiently particular."); *Cassady v. Goering,* 567 F.3d 628, 635-36 (10th Cir. 2009)(finding a warrant that authorized "seizure of 'all other evidence of criminal activity'" to be overly broad).

Like the warrant in *Kow*, the search warrant for the Lams' email accounts directed the agents to seize every message in the accounts from a five and a half year period, regardless of whether the message related to the alleged thefts of trade secrets involving JHL that the agent described in the search warrant affidavit. The warrant thus was not "related to specific criminal activity" and lacked particularity. The problems with the warrant were borne out by the results of the searches. The government can hardly deny that hundreds of emails were examined by the agents, many of which had little or nothing to do with the crimes allegedly at issue.

### C.  The September Search Warrant for the Lams' Home Lacked Specificity

The search for the Lams' home allowed the government to search for records from an even broader time period. While the supporting affidavit states that Mrs. Lam began to "work for" JHL in December of 2013, and described three specific incidents in which Xanthe Lam utilized her Gmail account to send documents allegedly containing trade secrets between January and July of 2014 (*see* Exhibit B at p.28 ¶¶ 81-84), the resulting search warrant allowed the FBI to seize *all* records created during a nearly eight-year time period, from 2009 through the date of the warrant in September of 2017. The affidavit failed to note any specific suspected violation of section 1832 in 2009 through late 2013, or any specific violation after July 3, 2014. Clearly, the time frame for documents and records to be seized that the government allowed itself in the warrant was untethered from the facts

concerning the probable cause that Genentech's investigators had developed.

In addition, the search warrant for the Lams' home was overbroad because it allowed the government to search locations as to which the government had not established probable cause that evidence of trade secrets theft would be located. When viewed in a manner most favorable to the government, the search warrant affidavit states that Xanthe Lam stored confidential documents on her Genentech-issued laptop. Further, the affidavit arguably established that Mrs. Lam and Mr. Lam stored confidential documents on servers that stored their emails. The affidavit does not contain any facts establishing that either of the Lams downloaded to or stored confidential Genentech materials on any devices other than Mrs. Lam's work laptop.

Despite the absence of probable cause that the Lams were storing trade secrets data on other devices or computers, the Orchid St. search warrant essentially authorized the FBI to seize any storage device they found in the Lams' home. The warrant instructed the agents to seize any device that contained materials relating to Genentech, the biotech industry in general, or files and data that tended to identify the person using the storage device. Given that both Mr. and Mrs. Lam had both worked in the biotech industry for decades, the government surely understood that the terms of the warrant effectively allowed the government agents to seize every single computer device found in the house. The government's affidavit had not established such wide-ranging probable cause, and the warrant was therefore overbroad in a manner that violated the Lams' Fourth Amendment rights.

The reach of the warrant for the search of the Lam's home was also so expansive that the warrant lacked particularity. Like the warrant for the search of the email accounts, the September search warrant authorized the FBI to seize all evidence and instrumentalities of a violation for 18 U.S.C. §1832, but then failed to describe what constitutes a "trade secret," much less a violation of the criminal statute. As this Court is well aware, the term "trade secret" has a very

specific definition in the context of a violation of section 1832. *See* 18 U.S.C. §1839(3) (2015). Neither the search warrant nor the supporting affidavit for the search of the Lams' home at 662 Orchid provided that definition to the agents who would conduct the search. The searching agents were thus provided little guidance as to what records or documents were related to a "trade secret."

Compounding this problem, the more "specific" definitions of the documents to be seized, as set out in the warrant, likely described every work-related document, computer file or other record to be found in the Lams' home. *See* Exhibit C at Attachment B, pp. 2-3. In addition, the warrant's more "specific" list of items to be seized include clauses that allowed the FBI to take "any digital device that included files concerning biopharmaceuticals" and to seize all evidence of "internet activity" on those devices and all evidence that might show who used who used those device in the eight-year time period covered by the warrant. *See Id.* Given that by the time the warrant was served, Mrs. Lam had worked for Genentech in the biopharmaceutical industry for more than 30 years, that nearly every email shows who is using the device on which the email is sent or stored, and every device that can be connected to the internet will include stored evidence of "internet activity," the search warrant essentially allowed the agents to seize every single business and computer record they found in the Lams' house. This was overbroad and unlawful.

By failing to provide any meaningful limit on what the agents could seize when they searched the Lams' home, the September search warrant improperly allowed the government's agents considerable discretion as to what items they could seize. The warrant simply failed to provide meaningful guidance as to what was to be seized and as result, it lacked the degree of particularity required under the Fourth Amendment.

//

1

## **CONCLUSION**

2      For the foregoing reasons, all evidence obtained by the government as a result of the June and

3   September 2017 search warrants should be excluded from evidence at trial.

4

5   Dated: February 3, 2020.                                Respectfully Submitted,

6

7                                                           /s/ K. Alexandra McClure
                                                            K. ALEXANDRA McCLURE
8                                                           Attorney for Defendant
                                                            XANTHE LAM
9

10                                                          /s/ William Osterhoudt
                                                            WILLIAM L. OSTERHOUDT
11                                                          Attorney for Defendant
                                                            XANTHE LAM
12

13                                                          /s/Michael Stepanian
14                                                          MICHAEL STEPANIAN
                                                            Attorney for Defendant
15                                                          ALLEN LAM
16
                                                            /s/ Daniel Olmos
17                                                          DANIEL OLMOS
18                                                          Attorney for Defendant
                                                            ALLEN LAM
19

20

21

22

23

24

25

26

27

28